_____

No. 95-3665
_____

United States of America,     *
                               *
          Appellee,     *
                               * Appeal from the United States
    v.                      * District Court for the
                               * Western District of Missouri
Charles E. St. John,      *
                               *
          Appellant.    *


_____

Submitted:  March 12, 1996

Filed:  August 19, 1996
_____

Before McMILLIAN, BEAM and HANSEN, Circuit Judges.
_____


McMILLIAN, Circuit Judge.


     Charles E. St. John appeals from a final judgment entered in
the District Court[1] for the Western District of Missouri revoking
his supervised release and sentencing him to 14 months imprisonment
to be followed by 22 months supervised release.  The district court
also ordered St. John to pay the balance of the fine which had been
originally imposed.  For reversal, St. John argues the district
court erred in imposing a revocation sentence that included both a
term of imprisonment and a term of supervised release because 18
U.S.C. § 3583(e)(3) does not authorize supervised release upon
revocation of supervised release and because 18 U.S.C. § 3583(h),
which does authorize supervised release upon revocation of
supervised release, was not in effect at the time the offenses were

_____

     [1]The Honorable Howard F. Sachs, United States District Judge
for the Western District of Missouri.

committed. St. John argues that application of 18 U.S.C. § 3583(h) imposes an increased penalty and thus violates the ex post facto clause. For the reasons discussed below, we affirm the judgment of the district court.

In December 1989 a federal grand jury indicted St. John for conspiracy to distribute dilaudid in violation of 21 U.S.C. § 846, seven counts of distribution of dilaudid in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). St. John pleaded guilty to the seven distribution counts and the firearms count, and in September 1990 the district court sentenced him to 63 months imprisonment, 36 months supervised release and a $4,000 fine. St. John completed his prison sentence and began serving his term of supervised release in May 1995. Almost immediately St. John violated the conditions of supervised release. Among other things, he repeatedly tested positive for illegal drug use, operated a motor vehicle under the influence of alcohol, and was arrested for solicitation. The government filed a motion to revoke supervised release. In October 1995 the district court held a revocation hearing; St. John did not contest the allegations of the violations. The district court revoked supervised release and sentenced St. John to 14 months imprisonment to be followed by 22 months supervised release, for a total of 36 months, the length of the original term of supervised release. The district court did not explicitly state the statutory basis for its order. The practical effect of the revocation sentence is that St. John will serve in prison 14 of the 36 months of the original term of supervised release. The district court also ordered him to pay the balance of the fine originally imposed. This appeal followed.

St. John argues the district court erred in sentencing him to both a term of imprisonment and a term of supervised release

because 18 U.S.C. § 3583(e)(3)[2] does not authorize the imposition, upon revocation of supervised release, of both a term of imprisonment and a term of supervised release.  St. John argues that, at the time he was originally sentenced in 1990, the only court to interpret § 3583(e)(3) had held that, because § 3583(e) was written in the disjunctive, a district court could revoke supervised release and either impose a term of imprisonment or modify the terms of the original supervised release, but not both. United States v. Behnezhad, 907 F.2d 896, 898 (9th Cir. 1990).  St. John acknowledges that this court subsequently held § 3583(e)(3) authorized imposition of a revocation sentence including both a term of imprisonment and a term of supervised release, United States v. Schrader, 973 F.2d 623, 624-25 (8th Cir. 1992), but he argues that due process prohibits imposition of a sentence based on case law decided after the offense was committed.  St. John also

---

[2]18 U.S.C. § 3583(e)(3) provides in part:

**(e) Modification of conditions or revocation.**  The court may . . .

. . . .

(3)  revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case . . . .

-3-

acknowledges that 18 U.S.C. § 3583(h) (effective Sept. 13, 1994),[3] which Congress enacted in 1994 as part of the Violent Crime Control Act and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 110505, 1994 U.S.C.C.A.N. (108 Stat.) 1796, 2017, specifically authorizes, upon revocation of supervised release, the imposition of both a term of imprisonment and a term of supervised release.  However, St. John argues that, because § 3583(h) was enacted subsequent to his conviction and increases the penalty for the offenses, applying § 3583(h) to him would violate the ex post facto clause.

Article I, § 9, of the Constitution prohibits Congress from passing ex post facto laws.  "[A]ny statute . . . which makes more burdensome the punishment for a crime, after its commission, . . . is prohibited as ex post facto."  Collins v. Youngblood, 497 U.S. 37, 42 (1990).  "[T]o fall within the ex post facto prohibition, two critical elements must be present:  first, the law 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.'"  Miller v. Florida, 482 U.S. 423, 430 (1987), citing Weaver v. Graham, 450 U.S. 24, 29 (1981).  Cf. California Dep't of Corrections v. Morales, 115 S. Ct. 1597, 1602 n.3 (1995) (shifting focus from whether the legislative change "produces some sort of ambiguous 'disadvantage'" to whether legislative change "alters definition of criminal conduct or increases the penalty by

_____

[3]18 U.S.C. § 3583(h) provides:

**(h) Supervised release following revocation.**  When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment.  The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

-4-

which a crime is punishable").  "It is 'axiomatic that for a law to be ex post facto it must be more onerous than the prior law.'" Miller v. Florida, 482 U.S. at 431, citing Dobbert v. Florida, 432 U.S. 282, 294 (1977); see, e.g., United States v. Bell, 991 F.2d 1445, 1448 (8th Cir. 1993) (more burdensome punishment after crime was committed violates ex post facto clause).

We address first St. John's ex post facto argument based upon the Ninth Circuit's construction of 18 U.S.C. § 3583(e)(3) in Behnezhad.  This argument must fail because "the ex post facto clause does not apply to judicial constructions of statutes." United States v. Burnom, 27 F.3d 283, 284 (7th Cir. 1994); see, e.g., United States v. Levi, 2 F.3d 842, 844 (8th Cir. 1993) (noting ex post facto analysis assumes the court is construing the effects of a penal "law").  "The Ex Post Facto Clause is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government." Marks v. United States, 430 U.S. 188, 191 (1977) (citation omitted). However, this Behnezhad-based argument raises due process considerations because

> the principle on which the [Ex Post Facto] Clause is based-- the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties-- is fundamental to our concept of constitutional liberty.  As such, that right is protected against judicial action by the Due Process Clause of the Fifth Amendment.  In Bouie v. City of Columbia, 378 U.S. 347[, 353-54] (1964), a case involving the cognate provision of the Fourteenth Amendment, the Court reversed trespass convictions, finding that they rested on an unexpected construction of the state trespass statute by the State Supreme Court:
>
>> [A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids. . . . If a state legislature is barred by the Ex Post Facto Clause from

-5-

> passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

Marks v. United States, 430 U.S. at 191-92 (citations omitted).

Viewed from a due process perspective, St. John's argument is essentially that Schrader and this court's later cases unforeseeably (and incorrectly) expanded the reach of 18 U.S.C. § 3583(e)(3) beyond Behnezhad. St. John argues (accurately) that all the other circuit courts of appeals that considered the issue followed Behnezhad and not Schrader. See United States v. Stewart, 7 F.3d 1350, 1354 (8th Cir. 1993) (Lay, J., dissenting) (noting that this court's holding in Schrader is contrary to that of all other circuits that have passed upon the issue and urging submission to court en banc for reconsideration); United States v. Krabbenhoft, 998 F.2d 591, 593 n.2 (8th Cir. 1993) (noting inconsistency between Schrader and the other circuits). However, this argument overlooks the fact that this court is not bound by the prior decisions of the other circuit courts of appeals. This circuit has consistently and repeatedly held that revocation sentences imposed under 18 U.S.C. § 3583(e)(3) may include both imprisonment and supervised release, as long as the aggregate of the two terms is less or equal to the original term of supervised release. See, e.g., United States v. Stewart, 7 F.3d at 1352 (stressing Schrader relied entirely on language of § 3583(e)(3) and not on relationship between § 3583(e) options or sentencing guidelines); United States v. Krabbenhoft, 998 F.2d at 594 ("term of supervised release" as used in § 3583(e) means the term of supervised release as originally imposed by the district court at sentencing); cf. United States v. Hartman, 57 F.3d 670, 671 & n.2 (8th Cir. 1995) (per curiam) (rejecting argument that recent enactment of 18 U.S.C. § 3583(h) which expressly allows district courts to impose revocation sentence consisting of both imprisonment and supervised release indicates this court

-6-

misinterpreted 18 U.S.C. § 3583(e) and instead interpreting new legislation as confirmation of this court's interpretation). Schrader simply does not represent a judicial expansion, much less an unforeseeable or unexpected judicial expansion, of a criminal statute, if applied retroactively, which would operate precisely like an ex post facto law and thus violate due process.

We next address St. John's ex post facto argument based on the difference between the prior law and the new law. This analysis is necessarily theoretical. "[A defendant] is not barred from challenging a change in the penal code on ex post facto grounds simply because the sentence [the defendant] received under the new law was not more onerous than that which [the defendant] might have received under the old." Dobbert v. Florida, 432 U.S. at 300. "[T]he ex post facto clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed." Lindsey v. Washington, 301 U.S. 397, 401 (1937).

Under the prior law, the district court could revoke supervised release and send the defendant to prison for a period equal to all or part of the maximum term of supervised release authorized for the original offense, without allowing any credit for the time spent on supervised release. 18 U.S.C. § 3583(e)(3). In this circuit, under the prior law, the district court could impose, in addition to the term of imprisonment (as limited by the statute), a new term of supervised release, so long as the aggregate of the two terms is less than or equal to the original term of supervised release. United States v. Krabbenhoft, 998 F.2d at 594 (interpreting "term of supervised release" as used in § 3483(a), (b), and (e) to refer to term of supervised release originally imposed by district court at sentencing); United States v. Schrader, 973 F.2d at 624-25. The new law expressly authorizes the district court to revoke supervised release and impose both a term of imprisonment and a term of supervised release. 18 U.S.C. § 3583(h). However, the district court can impose a new term of

supervised release only if the term of imprisonment is less than the maximum term of imprisonment authorized under § 3583(e)(3), and the new term of supervised release may not exceed the term of supervised release authorized for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.  Id.

Determining whether the new law increases the penalty authorized under the prior law is complicated by several factors. First, the maximum authorized terms of supervised release under § 3583(b) do not exactly match the maximum authorized terms of imprisonment for revocation of supervised release under § 3583(e)(3).  For example, for a Class A felony the maximum authorized term of supervised release is 5 years, the same as the maximum authorized term of imprisonment for revocation of supervised release.  18 U.S.C. § 3583(b)(1), (e)(3).  In comparison, the maximum authorized term of supervised release for a Class B felony is 5 years, id. § 3583(b)(1); however, the maximum authorized term of imprisonment for revocation of supervised release for a Class B felony is 3 years, id. § 3583(e)(3). Similarly, the maximum authorized term of supervised release for a Class C felony is 3 years, id. § 3583(b)(2), but the maximum authorized term of imprisonment for revocation of supervised release for a Class C felony is 2 years, id. § 3583(e)(3).

Second, unlike the prior law, the new law authorizes the district court to impose a new term of supervised release only when the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under § 3583(e)(3).  Id. § 3583(h).  Thus, under the new law, if the district court revokes supervised release and imposes the maximum term of imprisonment authorized, the district court cannot impose a new term of supervised release.

-8-

Third, this circuit has capped the maximum period of time that a defendant's freedom can be restrained, upon revocation of supervised release, to the term of supervised release imposed in the original sentence. United States v. Stewart, 7 F.3d at 1352-53 (the aggregate of term of imprisonment and new term of supervised release cannot exceed term of supervised release imposed in the original sentence). The new law provides that the new term of supervised release "shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release." 18 U.S.C. § 3583(h). We acknowledge that the meaning of the phrase "the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release" in this subsection is not free from doubt. The phrase could refer to the maximum authorized term of supervised release, id. § 3583(b). See United States v. Beals, 87 F.3d 854, 857 (7th Cir. 1996) (interpreting both § 3583(e)(3) and § 3583(h) to refer to the maximum term of supervised release authorized for original offense). However, we will construe the phrase to have the same meaning in the prior law and the new law, that is, to refer to the term of supervised release in the original sentence rather than the maximum authorized term of supervised release. United States v. Krabbenhoft, 998 F.2d at 594, citing Kifer v. Liberty Mutual Insurance Co., 777 F.2d 1325, 1333 n.9 (8th Cir. 1985) (when same word or phrase is used in same section of an act more than once, and its meaning is clear as used in one place, it will be construed to have the same meaning in the next place).

Finally, the express availability of a new term of supervised release under the new law is the key difference between the prior law and the new law. However, we believe that the new law and our interpretation of the prior law have the same effect. As noted above, this circuit had consistently and repeatedly held that revocation sentences imposed under 18 U.S.C. § 3583(e)(3) could

include both imprisonment and supervised release, as long as the aggregate of the two terms is less or equal to the original term of supervised release. See, e.g., United States v. Stewart, 7 F.3d at 1352. That difference distinguishes cases in our circuit from cases in those circuits which had interpreted the prior law to preclude a new term of supervised release upon revocation of supervised release. For example, in United States v. Beals, 87 F.3d at 857-58, the Seventh Circuit held that the new law disadvantages a defendant in violation of the ex post facto clause. The Seventh Circuit was one of the circuit courts of appeals that had interpreted the prior law to preclude a new term of supervised release upon revocation of supervised release. See United States v. McGee, 981 F.2d 271, 274 (1992). In Beals the Seventh Circuit noted that because a defendant receives no credit for time previously served on postrelease supervision, a defendant is potentially subject to greater punishment under the new law than the prior law. 87 F.3d at 857-58. This is because under the prior law, as interpreted in the Seventh Circuit, "a defendant could serve only one term of supervised release and thus only once 'lose' credit for time served prior to the revocation," but under the new law "a defendant can serve multiple terms of supervised release and thus potentially 'lose' multiple periods of time after the initial revocation." Id. at 857 (analysis also interprets § 3583(h) to permit new term of supervised release to be maximum period of supervised release authorized by statute for the offense, less any term of imprisonment imposed upon revocation). But see United States v. Brady, 88 F.3d 225, 228-29 (3d Cir. 1996) (holding new law does not change amount of time defendant's liberty can be restrained for violating supervised release; analysis interprets prior law and new law to limit that time to maximum term of supervised release authorized for given offense, without any credit for time spent on supervised release).

We conclude that a defendant is not potentially subject to an increased penalty under § 3583(h) because, given our interpretation

of § 3583(e)(3) in <u>Schrader</u> and subsequent cases like <u>Krabbenhoft</u>, the maximum period of time that a defendant's freedom can be restrained upon revocation of supervised release under the new law is either the same as, or possibly less than, under the prior law. Because application of the new law does not result in an increased penalty, there is no ex post facto violation.  That the potential penalty for revocation of supervised release under the new law is the same, or possibly less, under the prior law can best be illustrated by example.  In the case of a Class A felony, for which the maximum authorized term of supervised release is the same as the maximum term of imprisonment authorized under § 3583(e)(3), the availability of a new term of supervised release under the new law does not increase the time the defendant is subject to government supervision, either in prison or on supervised release.   <u>See</u> <u>United States v. Brady</u>, 88 F.3d 225, 228-29 (3d Cir. 1996) (possibility of 5-year loss of freedom both before and after enactment of § 3583(h) for defendant convicted of possession with intent to distribute, a Class A felony; noting that only difference is that under new law defendant's liberty can be restrained by "mix" of imprisonment and supervised release (assuming term of imprisonment is less than 5 years)).  In the case of a Class C felony, for which the maximum authorized term of supervised release is 3 years, under the prior law as interpreted in this circuit, a defendant could be sentenced, upon revocation of supervised release, to a term of imprisonment of 2 years (the maximum term of imprisonment authorized under § 3583(e)(3)) to be followed by a term of supervised release of 1 year.  Under the new law, however, that defendant could not be sentenced to a term of supervised release, and thus would be subject to <u>less</u> punishment than under the prior law, because the term of imprisonment was not less than the maximum term of imprisonment authorized under § 3583(e)(3).

The availability of a new term of supervised release under the prior law in this circuit (but not in other circuits) explains why the Seventh Circuit reached the contrary conclusion in the

-11-

hypothetical in Beal, 87 F.3d at 858. In the Beal hypothetical, A is convicted of a Class C felony and sentenced to a term of imprisonment followed by 3 years of supervised release (the maximum authorized under § 3583(b)(2)). A serves the prison time and is released under supervision. One year later A violates the terms of supervised release. Under the prior law in the Seventh Circuit, because an additional term of supervised release was not permitted upon revocation of supervised release, the maximum penalty the district court could impose was 2 years imprisonment (under § 3583(e)(3)). At the end of 2 years, the government's supervision of A was extinguished. However, under the new law, if the district court sentences A to 2 years on a combination of imprisonment and supervised release (1 year imprisonment and 1 year supervised release), then if A violates the terms of that second supervised release 6 months later, the district court could sentence A to up to 1 year in prison (2-year maximum less 1 year already served). The Seventh Circuit concluded that under the new law A would be subject to a total of 2 1/2 years punishment from the time of initial revocation (1 year in prison, 6 months on supervised release, then 1 more year in prison), or 6 months longer than that allowed under the prior law (2 years in prison, no new term of supervised release). In this circuit, however, under the prior law the maximum penalty the district court could impose was 3 years (the term of supervised release originally imposed), not 2 years; the maximum term of imprisonment would be the same (limited to 2 years), but the district court could impose an additional term of supervised release of up to 1 year.

In sum, because the availability of supervised release under 18 U.S.C. § 3583(h) does not increase the penalty authorized under 18 U.S.C. § 3583(e)(3), there is no ex post facto violation. Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.